THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF LOUISIANA
MONROE DIVISION

| | | |
|---|---|---|
| **RITCHIE CRAWLEY** | * | **CIVIL ACTION NO. 05-2108** |
| Versus | * | **JUDGE JAMES** |
| **COMMISSIONER OF THE SOCIAL SECURITY ADMINISTRATION** | * | **MAGISTRATE JUDGE HAYES** |

**REPORT & RECOMMENDATION**

Plaintiff, Ritchie Crawley ("Crawley"), appeals from a decision of the Commissioner of Social Security ("Commissioner") denying his application for disability insurance benefits for the period between February 26, 1997, through March 1, 2001.[1] The appeal was referred to the undersigned United States Magistrate Judge for proposed findings of fact and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and (C). For the reasons given below, it is recommended that the decision of the Commissioner be **REMANDED for further consideration consistent with this opinion.**

Introduction

Crawley, who is currently a forty-three year old individual, filed an application for social security disability insurance benefits on April 30, 1997. (Tr. p. 31). He has a high school or high school equivalent education and has worked as a farmhand and roughneck. Crawley was not employed from the period of February 26, 1997 until he returned to work in March 1, 2001, after

---

[1]The ALJ's decision states that the claimant returning to substantial gainful activity ("SGA") in March of 2000. (Tr. p. 201). However, claimant's testimony shows he actually returned to SGA in March of 2001. (Tr. p. 219).

1

having three vertebrate fused in July,1999.  In his claim for disability, Crawley alleges a disability onset date of February 26, 1997, due to "4 or 5 bulging disc[s] from my neck to my shoulders" which he injured when he slipped and fell down approximately twenty-five steps while working offshore.

The Social Security Administration denied the application both initially and on reconsideration. (Tr. p. 22,25).  A de novo hearing was held before an administrative law judge ("ALJ") on February 12, 1998, at which Crawley appeared pro se.  (Tr. p. 170)  After this hearing, the ALJ Charles R. Lindsay issued a decision in which he found Crawley not disabled, and Crawley subsequently appealed this decision.  (Tr. pp. 10-17).  The Appeals Council denied a Request for Review on August 15, 2001, (Tr. pp. 4-5), leading Crawley to file suit in this Court on October 10, 2001.  Magistrate Judge James Kirk issued a Report and Recommendation on July 9, 2002, recommending that Crawley's case be remanded pursuant to the fourth sentence of 42 U.S.C. § 405(g).  (Tr. pp. 252-59).  Judge James adopted the Magistrate Judge's findings and remanded the case for further proceedings consistent with the Report and Recommendation.  The Appeals Council remanded Crawley's case to the ALJ on January 18, 2005, and a hearing was held before ALJ Howard Treadman on June 14, 2005.

On August 27, 2005, ALJ Treadman issued a decision again denying Disability Insurance Benefits for the period of time at issue.  The ALJ found that Crawley suffered severe medically determinable impairments, but that these impairments did not meet or medically equal one of the listed impairments in Listing 1.04.  (Tr. p. 207).  The ALJ then determined that Crawley possessed the residual functional capacity ("RFC") to perform a reduced range of medium work, and demonstrated suitable jobs that were available in the national economy.  (Tr. p. 208).

2

Standard of Review; Substantial Evidence

This court's standard of review is (1) whether substantial evidence of record supports the ALJ's determination, and (2) whether the decision comports with relevant legal standards. *Villa v. Sullivan*, 895 F.2d 1019, 1021 (5th Cir. 1990). While substantial evidence lies somewhere between a scintilla and a preponderance, substantial evidence clearly requires "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Muse v. Sullivan*, 925 F.2d 785, 789 (5th Cir. 1991). Conversely, a finding of no substantial evidence is proper when no credible medical findings or evidence support the ALJ's determination. *Johnson v. Bowen*, 864 F.2d 340, 343-44 (5th Cir. 1988).

Determination of Disability

Pursuant to the Social Security Act ("SSA"), individuals who contribute to the program throughout their lives are entitled to payment of insurance benefits if they suffer from a physical or mental disability. *See* 42 U.S.C. § 423(a)(1)(D). The SSA defines a disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A). Based on a claimant's age, education, and work experience, the SSA utilizes a broad definition of substantial gainful employment that is not restricted by a claimant's previous form of work or the availability of other acceptable forms of work. *See* 42 U.S.C. § 423(d)(2)(A). Furthermore, a disability may be based on the combined effect of multiple impairments which, if considered individually, would not be of the requisite severity under the SSA. *See* 20 C.F.R. § 404.1520(a)(4)(ii).

The Secretary of Health and Human Services has established a five-step sequential evaluation process for ALJs to utilize in determining whether a claimant is disabled under the SSA. *See* 20 C.F.R. §§ 404.1520, 416.920. The United States Court of Appeals for the Fifth Circuit, in *Loza v. Apfel*, succinctly summarized this evaluation process:

> The first two steps involve threshold determinations that the claimant is not presently engaged in substantial gainful activity and has an impairment or combination of impairments which significantly limits his physical or mental ability to do basic work activities. In the third step, the medical evidence of the claimant's impairment(s) is compared to a list of impairments presumed severe enough to preclude any gainful activity. If the claimant's impairment matches or is equal to one of the listed impairments, he qualifies for benefits without further inquiry. If the person cannot qualify under the listings, the evaluation proceeds to the fourth and fifth steps. At these steps, analysis is made of whether the person can do his own past work or any other work that exists in the national economy, in view of his age, education, and work experience. If he cannot do his past work or other work, the claimant qualifies for benefits.

219 F.3d 378, 390 (5th Cir. 2000) (internal citations omitted). The claimant bears the burden of proving a disability under the first four steps of the analysis; under the fifth step, however, the Commissioner must show that the claimant is capable of performing work in the national economy and is therefore not disabled. *Bowen v. Yuckert*, 482 U.S. 137, 146 n. 5 (1987). If at any point during the five-step review the ALJ finds the claimant disabled or not disabled, that finding is conclusive and terminates the analysis. *Lovelace v. Bowen*, 813 F.2d 55, 58 (5th Cir. 1987).

Analysis

Crawley appealed to this Court alleging two errors; (1) that the ALJ erred in finding that Crawley's impairments did not meet or medically equal Listing 1.04, and (2) in the alternative, that the ALJ failed to properly set Crawley's RFC by not considering his obesity, back and neck

4

pains, side effects of prescribed narcotics, and by placing greater weight on an examining physician's opinion than that of a treating physician.

In establishing that a claimant's injuries meet or medically equal a Listing, the claimant's burden is to provide and identify findings that support all of the criteria for a Step 3 impairment determination. *McCuller v. Barnhart*, 72 Fed. Appx. 155, 158 (5th Cir. 2003); *Selders v. Sullivan*, 914 F.2d 614, 619 (5th Cir. 1990); 20 C.F.R. § 416.926(a) (2004). To satisfy this burden, the claimant must show that his impairment "meet[s] all of the specified medical criteria. An impairment that manifests only some of those criteria, no matter how severely, does not qualify." *Sullivan v. Zebley*, 493 U.S. 521, 530, 110 S.Ct. 885, 107 L.Ed.2d 967 (1990). If the plaintiff fails to show the specified medical criteria, the court will find that substantial evidence supports the ALJ's finding that Listings-level impairments are not present. *Selders v. Sullivan*, 914 F.2d at 620. Courts acknowledge that the criteria in the Listings are demanding and stringent. *Falco v. Shalala*, 27 F.3d 160, 162 (5th Cir. 1994).

Crawley claims the ALJ erred by not finding his condition to meet or medically equal Listing 1.04(A), which provides as follows, in pertinent part:

> 1.04 Disorders of the spine (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equina) or the spinal cord. With:
>
> A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine);

20 C.F.R. Part 404, Subpt. P, App. 1, § 1.04. If Crawley demonstrates that he meets all of the conditions required in the listing, he qualifies for disability without any further inquiry. *Loza*,

5

219 F.3d at 390.

In order to meet or medically equal Listing 1.04 for disability purposes, Crawley must prove a disorder of the spine resulting in compromise of a nerve root and show evidence of nerve root compression. *See* 20 C.F.R. Part 404, Subpt. P, App. 1, § 1.04. To show a nerve root compression, the claimant must show the existence of three elements: (1) neuro-anatomic distribution of pain; (2) limitation of motion of the spine; and (3) motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss, and if the lower back is involved, a positive straight-leg raising test. *Id.* As noted above, the claimant carries the burden of proving that the required medical conditions were present. *McCuller,* 72 Fed. Appx. at 158.

**Disorder of the Spine Resulting in Compromise of a Nerve Root or Spinal Cord**

Listing 1.04 gives examples of disorders of the spine, one of which is degenerative disc disease. In a May 16, 1996, MRI of the lumbar spine performed by Dr. Thompson M. Dietz, IV, the doctor notes "there probably is minimal extrinsic impression upon the anterior thecal sac[2] margin at the L3-4 and 4-5 levels, though the lumbar spinal canal remains adequate in its overall dimensions." (Tr. p. 154). Additionally, Dr. Thomas Whitecloud, III, noted on June 14, 1999, that a new MRI showed the same "multi level degenerative disease from L3 to S1" as well as a "herniation at L5-S1." (Tr. p. 296). Crawley clearly proves he has the requisite spinal disorder and that there is at least some compromise of the nerve root.

---

[2]The thecal sac is a protective membrane that covers the spinal cord and cauda equina. The thecal sac contains cerebrospinal fluid that provides nutrition to the spinal cord. (*spine.org/fsp/anatomy-functions.cfm*).

**Nerve Root Compression**

In order to satisfy subpart A, Crawley must show evidence of nerve root compression characterized by all of the three previously mentioned elements. For the first element, Crawley must show neuro-anatomic distribution of pain. In April 1997, Dr. Myron B. Bailey, Jr. reported a positive cervical compression test, a test for radiculopathy[3]. (Tr. p. 132). In May, 1999, Dr. Whitecloud reported that Crawley complained of "burning and painful sensation on the posterior aspect of both legs" and "weakness of his bilateral lower extremeties." (Tr. p. 297). With a positive cervical compression test, Crawley successfully demonstrates that he has the required neuro-anatomic distribution of pain.

The next element in demonstrating a nerve root compression is limitation of motion of the spine. Dr. Bailey reports a "limited range of motion" in April, 1997. (Tr. p. 132). In July, 1997, Dr. Whitecloud noted that Crawley "has somewhat decreased range of motion with flexion extension secondary to pain." (Tr. p. 139). Later, the Disability Determination Services ("DDS") sent Crawley to Dr. Eugene Taylor for further examination in May, 1998, and Dr. Taylor reported "[Crawley] flexes the spine 40 degrees. Lateral bending to the left causes pain in the same area." (Tr. p. 166). Thus, Crawley presents the Court with evidence supporting limitation of motion of his spine.

The third element is motor loss accompanied by sensory or reflex loss. Motor loss can be shown by either "atrophy with associated muscle weakness" or "muscle weakness." Glenn

---

[3]Radiculopathy is used to "specifically describe pain, and other symptoms like numbness, tingling, and weakness in your arms or legs that are caused by a problem with your nerve roots." (*www.back.com/symptoms-radiculopathy.html*).

Guilbeau, Crawley's physical therapist on March 14,1997, noted mucsle weakness in the right hand as compared to the left hand.[4] (Tr. p. 109). Additionally, on September 2, 1997, Ron Freeman, Crawley's physical therapist at the time, noted decreased strength in the left dorsiflexors, quads, hamstrings, biceps, deltoids. (Tr. p. 161).

However, on March 17, 1997, Dr. Bailey's records reveal Crawley possessed "normal motor strength . . . in the upper and lower extremeties" as well as there being no evidence of atrophy or fasciculation. (Tr. p. 133). After Dr. Bailey referred Crawley to Dr. Whitecloud, Dr. Whitecloud found the upper extremities to possess "5/5" motor strength and have "extremity sensory" intact. (Tr. p. 139). Whitecloud did note a positive straight-leg test on both sides, a requirement for finding motor loss in the lower extremities. (Tr. p. 139). After referral from DDS, Dr. Taylor found "diminished but equal deep tendon reflexes in the lower extremities" and a "diminution of pinprick appreciation" in the lower legs, suggestive of the necessary sensory or reflex loss. (Tr. p. 166). Dr. Taylor also related that there was no evidence of atrophy or muscle weakness of any of the muscle groups in the upper or lower extremeties. (Tr. p. 166-67). In May, 1999, Dr. Whitecloud again treated Crawley and reported complaints of weakness of the bilateral lower extremities with episodes of falling down, but noted Crawley's reflexes as normal. (Tr. p. 297). The ALJ did not discuss any of the above records, and it is unclear based on the reords whether Crawley possesses the necessary motor loss to qualify for a Step 3 disability determination.

---

[4]Guilbeau tested Crawley's grip strength with the J-mar digital dynonometer. He noted a grip strength between 86 to 100 pounds for the right hand as compared to a strength of 127 to 133 pounds for the left hand. The record shows that Crawley is right handed. Therefore, a greater grip strength in the left hand may be indicative of loss of strength in the right.

ALJ Treadman failed to address the medical records of Dr. Whitecloud, a treating physician, between the time of the initial disability determination by ALJ Lindsay and the hearing on remand, and therefore necessarily failed to seek clarification from Dr. Whitecloud or to explain why he apparently declined to give weight to Dr. Whitecloud's findings. The Fifth Circuit has "long held that 'ordinarily the opinions, diagnoses and medical evidence of a treating physician who is familiar with the claimant's injuries, treatments, and responses should be accorded considerable weight in determining disability." *Myers v. Apfel*, 238 F.3d 617, 621 (5th Cir. 2001) (citing *Greenspan v. Shalala*, 38 F.3d 232, 237 (5th Cir. 2001)). Additionally, the Fifth Circuit stated:

> *when good cause is shown*, less weight, little weight, or even no weight may be given to the physician's testimony. The good cause exceptions we have recognized include disregarding statements that are brief and conclusory, not supported by medically acceptable clinical laboratory diagnostic techniques, or otherwise unsupported by the evidence

*Greenspan*, 38 F.3d at 237 (emphasis added) (citing *Scott v. Heckler*, 770 F.2d 482, 485 (5th Cir. 1985)). 20 C.F.R. § 404.1527(d)(2) sets forth the weight to be given to treating source opinions. The SSA "will always give good reasons in [its] notice of determination or decision for the weight [given to a] treating source's opinion." 20 C.F.R. §§ 404.1527(d)(2) (2002); *see also Myers*, 238 F.3d at 621. Additionally, 20 C.F.R. §§ 404.1527(d) lists factors[5] that an ALJ must

---

[5]Specifically, this regulation calls for consideration of 6 factors:
(1) the physician's length of treatment of the claimant
(2) the physician's frequency of examination
(3) the nature and extent of the treatment relationship
(4) the support of the physician's opinion afforded by the medical evidence of record
(5) the consistency of the opinion with the record as a whole; and
(6) the specialization of the treating physician

9

consider when deciding what weight to give a treating opinion if that treating opinion is not given controlling weight. *See* 20 C.F.R. §§ 404.1527(d) (2002). The Fifth Circuit has held that "an ALJ is required to consider each of the § 404.1527(d) factors before declining to give any weight to the opinions of the claimant's specialist." *Newton v. Apfel*, 209 F.3d 448, 456 (5th Cir. 2000). Failure to give great weight to the treating physician's opinion absent good cause for rejecting it constitutes disregard of applicable principles of law and is grounds for a remand. *Newton*, 209 F.3d at 455-6.

In this case, the ALJ's failure to address Dr. Whitecloud's opinion implicates both his finding that Crawley failed to meet or mechanically equal Listing 1.04 and his finding regarding Crawley's RFC. Because it is unclear whether Crawley meets Listing 1.04 and because the ALJ failed to properly discuss the opinion of Dr. Whitecloud, a treating physician, it is recommended that the decision of the Commissioner be **REMANDED for further consideration consistent with this opinion.**

THUS DONE AND SIGNED, this 25th Day of August, 2006, in Monroe, Louisiana.

_____
KAREN L. HAYES
U. S. MAGISTRATE JUDGE